IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TINA MARIE WELLER, | ) | Case No. 03-46471-drd |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| TINA MARIE WELLER, | ) | Adversary No. 04-4029 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TEXAS GUARANTEED STUDENT LOAN | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Debtor Tina Marie Weller ("Debtor") initiated this adversary proceeding by filing a document entitled Objection to Proof of Claim and Motion to Determine Amount Due on Account ("Objection") seeking a determination that one or more claims filed by certain creditors holding student loans taken out by Debtor had been paid in full. The Objection was subsequently amended by interlineation to seek, in the alternative, a determination that her student loan debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon her an undue hardship, which allegations the defendant Texas Guaranteed Student Loan Corporation ("Defendant" or "TGSLC") denied.[1]  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction

---

[1] TGSLC is the only remaining defendant. The other named defendants have either been dismissed or had a default judgment entered against them.

pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor has not paid her student loan debt in full to Defendant TGSLC and that the remaining debt is not dischargeable pursuant to § 523(a)(8).

## I. FACTUAL BACKGROUND

Debtor took out approximately 18 different student loans over a period from 1979 to 2001, some of which were consolidated in 1996 into a loan held by Sallie Mae ("SLMA") and subsequently assigned to Defendant.[2] Debtor completed an Application/Promissory Note dated July 31, 1996, and listed several of her loans to be consolidated that totaled in excess of $48,000.[3] It appears from the evidence that on November 7, 1996, Sallie Mae disbursed $41,640.47 on behalf of Debtor to consolidate the loans listed on the Application/Promissory Note at a fixed rate of interest at 8%.[4] The consolidation loan is the loan at issue in this Memorandum Opinion.

Debtor argues that Defendant has not properly credited her account and that the payments she has already made were sufficient to pay the indebtedness owed to Defendant on the consolidation loan. That position is predicated upon a disagreement both as to the beginning principal amount of the indebtedness on the consolidation loan (i.e., which loans were consolidated and how much was advanced on her behalf) and the application of payments made by her. Debtor also asserts that even if

---

[2] Defendant's Ex. 3.

[3] Def.'s Ex. 1.

[4] Def.'s Exs. 4, 9, 20 & 21.

she does still owe some amount to Defendant, it would be an undue hardship for her to repay such amount under 11 U.S.C. § 523(a)(8).

## II. DISCUSSION

### A. Amount of Debt

Debtor has essentially filed a declaratory judgment proceeding which seeks in part a determination that she no longer owes a debt to Defendant. Bankruptcy courts have authority to issue declaratory judgments where the matter in controversy involves the administration of a pending bankruptcy estate. *See Sears, Roebuck and Co. v. O'Brien,* 178 F.3d 962, 964 (8th Cir.1999). The party seeking a declaratory judgment must bear the burden of proof in these proceedings. *See Reliance Life Ins. Co. v. Burgess,* 112 F.2d 234, 238 (8th Cir.1940); *see also, Debold v. Case (In re Tri-River Trading, LLC)*, 2004 WL 2382679 (Bankr. E.D. Mo. 2004). The declaratory judgment will be determined by weighing the evidence of each party. *Id.* For all the reasons set forth below, the Court does not believe Debtor has sustained her burden of demonstrating that Defendant's accounting is inaccurate and that she is entitled to credit for amounts she claims to have paid which were not applied to the consolidation loan.

First, Debtor asserts that the amount advanced on her behalf on the consolidation loan was less than the amount reflected in Defendant's records. Defendant's records clearly show in numerous places that the amount disbursed on Debtor's behalf for the consolidation loan was $41,640.47.[5] The amounts listed in the promissory note for the consolidation loan, all of which appear in Debtor's

---

[5]Def.'s Exs. 4, 9, 19 & 20.

handwriting according to her testimony, actually total somewhat more than that, in excess of $48,000.00.[6] Debtor alleges that the amount advanced on her behalf was $30,816.00, although she provides no support for that contention. She also claims that Defendant's own records appear to indicate that the amount advanced on her behalf was $32,177.10, although that appears to be a misinterpretation of Debtor's Exhibit J, the last page of which is an incomplete copy of Defendant's Exhibit 8. As Defendant explained, Defendant's Exhibit 8 is simply a listing of the amounts advanced on Debtor's behalf over time, and does not represent the balances on the notes consolidated as of the date of consolidation.

Debtor's theory about the discrepancy between the $32,177.10, which she believes is the amount disbursed, and the $41,640.47 reflected on certain of Defendant's records, is that the difference is the approximate amount of the difference between the face amount of a note executed to assist her in financing her law school education (the Law Access Loan or LAL) and the amount of credit actually advanced to her on that note. The LAL note amount is $13,000.00, although it is limited by its own terms to "the extent advanced" and the actual amount loaned to her for this purpose was $5,000.00. Debtor believes that the LAL loan was included in the consolidation loan and was included at the level of the face amount of the note rather than the amount of credit actually extended and that this difference resolves the apparent discrepancy with regard to the original principal amount of the consolidation loan. Debtor's Exhibit J does in fact show that the amount advanced to debtor on this loan was $4,956.00. That same evidence, however, also demonstrates that the loan was separate and

---

[6]Def.'s Ex. 1.

4

distinct from Debtor's federal student loans.[7] There is no evidence that it was a part of the consolidation note. There is, therefore, no evidence to support Debtor's contention that the amount advanced on her behalf was anything less than the $41,640.47 reflected in Defendant's records. The Court, therefore, finds that the weight of the evidence supports the contention that the original principal amount of the consolidation loan was $41,640.47.

Next, Debtor claims that she paid more than she was credited on the consolidation loan and more than she should have in order to have retired the indebtedness. Defendant's records reflect, and the parties agree, that Debtor was credited for having paid the sum of $53,658.11 on the consolidation loan. Debtor claims she actually paid $65,825.11 and that amount should have been enough to pay the consolidation loan in full. There are two problems with Debtor's calculations. First, Debtor's crude calculations of the amount required to satisfy the debt owed on the consolidation loan all start from an assumed principal balance which is less than the amount of credit originally extended to her and fail to take into consideration that the loan was in deferment on several occasions during which period of time the accrued interest was capitalized and increased the interest-bearing principal.[8] Second, the Court finds that Debtor's allegation that certain payments were made by her which were attributable to the consolidation loan, but not appropriately credited to that loan has not been substantiated.

Debtor's Exhibit N contains a list of payments by date and amount which she alleges were not credited to the consolidation loan on the Defendant's records. These allegedly excluded payments

---

[7]Debtor's Ex. J ("In addition to your federal loans, you also pursued a loan from Law Access Group.")

[8]Debtor's Ex. I.

5

were examined in detail on cross examination. That examination causes the Court to conclude that Debtor's assertion that all the listed payments should have been credited to the consolidation loan is not credible and is based on a misunderstanding by Debtor as to which loans were included in the consolidation loan, who held her loans and who serviced them. She admitted on cross-examination that one of the checks included on her list of allegedly excluded credits was a mistake.[9] Contrary to Debtor's contention, every one of the checks made out to Sallie Mae or Sallie Mae Servicing Center ("SMSC") included in her Exhibit K is reflected on Defendant's accounting.[10] In each case, there is on Defendant's Exhibit 4 a credit in precisely the same amount as the check on Debtor's Exhibit K credited to her consolidation loan several days after the date the check was dated. Debtor's assertion that there is no way to verify that the credit is for the same check shown on her Exhibit K and that she may have issued a second check in that same month in the same amount at approximately the same time is unsupported by anything other than Debtor's speculation and is not credible. Debtor's Exhibit Q reflects check no. 1170 dated June 30, 2003, made payable to "Sallie Mae/AES/GLC/SLSC" in the amount of $23,500.00. Defendant's records reflect a payment in the same amount being credited to Debtor's consolidated loan on July 9, 2003.[11] Presumably, this credit is for check no. 1170. Debtor argues that because she made the check payable to all of the separate entities that she had been sending various student loan payments to that this is evidence that they are all one and the same and that all of

---

[9] Debtor's Ex. K14 (check no. 1057 in the amount of $614.73 made payable to Bank One Visa).

[10] Compare Debtor's Ex. K and Def.'s Ex. 4.

[11] Def.'s Ex. 4.

6

the other checks that she sent to AES or GLC individually should have been credited to her consolidated loan. Standing alone, however, it proves no such thing. The Court could just as well presume that the first entity listed negotiated the check and applied the payment and was the holder of the loan to which the payment was credited, i.e., Sallie Mae, who held the consolidated loan. Moreover, this check was sent in response to a request by Debtor for a payoff figure on the consolidation loan.

Each of the other checks Debtor contends should have been credited to the consolidation loan were not made out to Sallie Mae, but to some other entity. In one instance, the check was made out to Bank One, as trustee for Key Corporation.[12] The evidence indicates that plaintiff had a loan from Key Corporation which is now held by The Education Resources Institute, Inc. ("TERI"), another defendant in the case.[13] This check quite obviously relates to that loan which is still held by another entity and was therefore not part of the consolidation loan now held by Defendant. The amount of that payment, therefore, was correctly not credited to the consolidation loan. In rebuttal, Debtor introduced into evidence check no. 1169 in the amount of $1,500.00 dated January 3, 2003, and made out to Bank One, Trustee for Key Corp. which she contends appears on Defendant's exhibit no. 4 as a $1,500.00

---

[12]That check, made payable to "Bank One Trustee Key Corp.", was check no. 1317 in the amount of $2,500. Debtor's Ex. K23. The Court notes that the majority of Debtor's checks made payable to "Bank One" appear to be payments on her credit card account as they all reference the same 16 digit account number indicative of a credit card number, and check no. 1057 made payable to "Bank One Visa" also references that same account number and Debtor admitted on cross-examination that that check should not have been credited to the consolidation loan. *See* Debtor's Exs. K7, K10B, K14.

[13]Default judgment was entered against TERI for failure to respond to Debtor's Objection and Amended Complaint.

credit on the consolidation loan.  Debtor would have the Court draw the inference that if there is a payment in that amount at the same time appearing as a credit on the consolidation loan, that previous checks made out in this way should have been so credited.  While the application of the proceeds of this check to the consolidation loan may raise some questions, it does not affirmatively demonstrate that a prior check made out the same way at a different time was necessarily attributable to the consolidation loan.[14]  It clearly does not demonstrate that Debtor's consolidation loan has been paid in full as she claims.  As noted earlier, the Court believes the evidence shows a loan originated by Key Corporation is now held by another entity. Debtor herself admitted the Key Corp. loan was not included in the consolidation loan.[15]  Finally, this evidence could just as well indicate that the $1,500.00 payment was applicable to another loan, was erroneously credited toward the consolidation loan and that the amount Debtor still owes on the consolidated loan is thus actually higher than the amount claimed by Defendant.

The other checks which Debtor contends should have been applied to the consolidation loan were in odd amounts, approximately half of the regular monthly payment to SLMA, and made out to Graduate Loan Center ("GLC").  Debtor claims that GLC was "part of SLMA," a speculation which is

---

[14] The Court offered an opportunity for the parties to make post-trial submissions.  Debtor took this opportunity to submit to the Court entirely new evidence, including information from the back of check no. 1169 which purports to support her conclusion that this check was processed through the same SLMA account as were other payments she made on the loan.  The Court refuses to consider that evidence for the reason that these exhibits were not listed on Debtor's original or amended exhibit list and were not introduced into evidence at trial.  Defendant has therefore had no opportunity to address them.  The Court's offer of an opportunity to make post-trial submissions was intended to give the parties a chance to address the legal significance of the evidence admitted at trial and submit legal authorities, not to supplement the evidentiary record.

[15] Objection, ¶ 14.

8

unsupported by any evidence. More importantly, there is no evidence that these payments were either attributable to the consolidation loan or received by Defendant's predecessor, SLMA. There are a number of reasons to believe that they were not. As Defendant's counsel pointed out on cross-examination, the processing information reflected on the back of the checks, for those checks for which it was available, shows that the checks to SLMA and the checks to GLC were processed in different ways which reflected their receipt and application by different entities. In the case of each check made out to SLMA, there was a notation in the upper right-hand corner of the back of the check – "SAL" – indicating the check was received by SLMA. The checks made out to GLC all had a different notation on the reverse side which did not in any way identify SLMA.

Other pieces of evidence are instructive on whether SLMA was involved in and received those payments and, if not, who did and for what loan. At a later time, certain checks made out to GLC bore a different processing notation indicating that the applicable loan was at that time being serviced by SLMA. This evidence supports an inference that earlier in the process, SLMA was not involved in any way in the GLC loan, but at some later time acted as servicer for the GLC loan. As Defendant's counsel pointed out, there is a difference between acting as servicer for the loan and holding the loan as owner. SLMA acts as servicer for other entities on loans not held by it. Another exhibit, Debtor's Exhibit K28 and check no. 2053, was made out to "GLC-LAL." The LAL loan was a loan taken out by debtor to finance her attendance at Baylor Law School and was identified by the evidence as a separate loan unrelated to debtor's federal student loans. This suggests that the payments to GLC were applicable to the law school LAL loan. Other facts about the payments represented by the checks made payable to GLC indicate that they were not applicable to the consolidation loan. Debtor

9

was on a level payment plan for the consolidation loan with monthly payments in a fixed amount. The amount of the checks to GLC was consistently approximately half of that amount. It simply doesn't make sense that Debtor would issue two checks on one consolidation loan in two different amounts at the same time each month to two different entities, the total of which is inconsistent with the amount of the level payment on the consolidation loan.

Debtor claims that at some point she received from SLMA a check signifying that her account was not only paid, but overpaid. She alleges that she received a check from SLMA in the amount of approximately $2,000 with a notation that it was to "clear the account." She could not produce a copy of the check nor did she introduce into evidence any other documentation containing an acknowledgment that the account was overpaid. Further, Debtor admits that the money never showed up in her account although she claims to have deposited the check. Other evidence in the record clearly shows that SLMA and Defendant have consistently acted on the belief that a balance is owed by Debtor even after her substantial payment in July 2003.[16] The Court does not find Debtor's testimony about this check to be credible evidence of an acknowledgment by SLMA that her consolidated loan at issue was overpaid. In addition, such testimony cannot overcome the other substantial evidence regarding the amount disbursed, interest accrued and amounts paid on the consolidation loan as reflected by Defendant's accounting and the examination of the allegedly excluded payments, all of which point to the conclusion that the amount claimed by Defendant of $10,505.78 remains due.

---

[16] Def.'s Exs. 4 & 9.

10

Debtor requested a payoff figure on the consolidation loan in late June 2003.[17] The figure that she was given, effective until July 10, was $43,451.39. On July 9, in several checks of differing amounts, Debtor paid the total sum of $33,451.39, precisely $10,000 less than the quoted payoff figure. When asked why she paid less than the payoff figure given, Debtor testified first that that was all the credit available to her on credit cards used to fund the payment. She also contended that she protested that the balance was inaccurate and that the amount paid was the only amount due, but produced no documentation to confirm that claim. Defendant's records contradict that and suggest Debtor requested a plan to payoff the remaining balance.[18] Those records, which include a log of events and communications on the consolidation loan, reflect a request by Debtor near the same time as the payment for a new coupon book to pay off the remaining balance at the rate of $82.11 per month.[19]

Accordingly, the Court concludes that the evidence supports findings that the principal amount originally owed on the consolidation loan was $41,640.47, that Debtor has paid $53,658.11 towards the consolidation loan and that a balance of $10,505.78 remains due on the consolidation loan after accounting for interest and late charges.[20]

B.  Undue Hardship

---

[17] *See* Def.'s Ex. 4.

[18] *See* Def.'s Ex. 4.

[19] *Id.*

[20] This is the amount claimed in Defendant's proof of claim filed in Debtor's bankruptcy case No. 03-46471. Additional interest may have accrued since the proof of claim was filed.

Debtor also contends that even if there is a balance owed on the consolidation loan, that it would be an undue hardship for her to repay the remaining amount due.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents.  The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor.  *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704.  In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged.  *Long*, 322 F.3d at 554.  The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable

flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

### B. Analysis of the Totality of the Circumstances

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. Debtor's expenses are clearly modest and include nothing which is unnecessary or unreasonable in amount. Her current income is low and clearly does not cover her expenses.[21] At present, Debtor lacks the ability to pay the balance due on the consolidation loan. The Court, however, must look beyond the present to the foreseeable future and consider Debtor's education, training, employment history and ability to earn. Debtor is 44-years-old and thus has approximately 20

---

[21] Def.'s Exs. 15 & 17.

years of working life remaining until a standard retirement age. She is single and has no dependents.

Debtor has several advanced degrees, including a law degree.[22] She also has an employment history since her graduation from law school in 1994 which indicates that she does have the ability to obtain positions in which she earns substantial income.[23] After a rocky start, she did have several positions in which she earned substantial income, including one in which she earned more than $40,000 per year.[24] She was employed as an assistant city attorney in Corpus Christi, Texas from March 1996 through July 1997 and earned $27,599 and $34,832 in those years, respectively.[25] From July 1998-2001 she was employed as in-house counsel for the Texas Department of Protective and Regulatory Services and earned $36,779 in 1999 and $42,144 in 2000. In 2001 she earned $25,707. The Court recognizes that since 2001 Debtor has had difficulty finding and maintaining a good paying job. However, based on her past employment and earning history, as well as her qualifications, the Court finds that Debtor has the ability to find employment with a salary similar to those that she has earned in the past. Debtor's average yearly income from 1996 through 2001 was $30,322.50. If Debtor found income at that level, she would enjoy a monthly income (without allowance for taxes) of $2,526.87.

The second factor the Court must look at is Debtor's reasonable living expenses. Debtor's Schedule J lists her monthly expenses at $2,055. Defendant does not take issue with any of Debtor's listed monthly expenses and the Court finds that they are not in any respect unreasonable. That figure,

---

[22]Def.'s Ex. 14.

[23]Def.'s Exs. 12, 13 & 14.

[24]Def.'s Ex. 13.

[25]Def.'s Exs. 12 & 14.

14

however, does include the sum of $189.00 per month for payments to student loan creditors, only $109.00 of which, being paid to the Department of Education, Debtor will be required to continue to pay subsequent to her discharge on loans other than the one at issue. The figure also includes $704.00 per month for payment to credit card debt which was discharged in Debtor's bankruptcy.[26] The resulting expense level of just under $1,271.00 easily provides Debtor with room to make a modest payment on the consolidation loan owed to Defendant which, as noted below, would be less than $100.00 per month.

As to the third factor the Court must evaluate, the Debtor has presented no evidence of unique facts or circumstances that the Court believes will cause an undue hardship for the Debtor to repay the balance owed on the consolidation loan. She has no significant health problems. Although there is testimony about health issues that Debtor has had, none of that testimony indicates a continuing problem which interferes with her ability to earn or imposes a significant financial burden. Debtor testified that she had a kidney stone some time ago, but that problem has been resolved and the expenses of that medical treatment were either covered by insurance or included in her discharge. There is no evidence that that problem has any continuing effect on her. Debtor also testified that she recently had basal cell carcinoma and had a cancerous growth removed. Once again, however, there is no evidence that this is a debilitating condition or has any significant impact on her ability to work. Neither is there any evidence that the previous or ongoing expenses related to follow-up treatment will impose a significant financial burden on her.

---

[26]Debtor testified that her monthly expenses were approximately $900-$1,200.

Thus, based on the Court's evaluation of all of the evidence presented in conjunction with the totality of the circumstances, the Court believes that Debtor's reasonably foreseeable financial prospects include the ability to earn a salary similar to the salaries that she has earned in the past. The monthly payments on the remaining balance will be approximately $82-85 per month.[27] Based on Debtor's ability to substantially increase her monthly income in the foreseeable future along with the fact that Debtor has over 22 years remaining before she reaches retirement age, the Court concludes that it will not be an undue hardship on Debtor to pay the remaining amount owed on the consolidation loan. It is therefore

ORDERED that the indebtedness owed by debtor Tina Marie Weller to defendant Texas Guaranteed Student Loan Corporation is non-dischargeable pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Rule 9021.

Dated: <u>November 2, 2004</u>

<u>/s/ Dennis R. Dow</u>

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Tina Marie Weller

N. Larry Bork

---

[27] Def's Ex. 4, pp. 3-4.

17